UNITED STATES DISTRICT
COURT MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:24-cr-474-WFJ-SPF

FRANCISCO JAVIER BALON DEL PEZO

**ORDER FINDING DEFENDANT FRANCISCO JAVIER BALON DEL PEZO COMPETENT TO STAND TRIAL**

The question before the Court is whether Defendant Francisco Javier Balon Del Pezo (Balon) is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Although Balon suffers from some cognitive deficits likely caused by a prior traumatic brain injury, the Court finds that Balon has an adequate understanding of the nature and consequences of the proceedings against him and can assist properly in his defense. As a result, Balon is competent to stand trial.

**PROCEDURAL HISTORY**

On February 25, 2025, the Court found there to be reasonable grounds to believe Balon may presently suffer from a mental disease or defect rendering him mentally incompetent to proceed to trial (Doc. 42). The Court appointed Dr. Debra Goldsmith, Ph.D., to conduct an independent psychological examination of Balon. Following the psychological examination on March 29, 2025, Dr. Goldsmith filed her Forensic

Psychological Evaluation (Doc. S-43). Dr. Goldsmith opined that Balon "is presenting as incompetent to proceed with his legal proceedings based upon his lack of knowledge of the United States legal system and mental illness (311). He provided an unacceptable explanation of the legal roles and concepts that were presented to him" (*Id.*). Dr. Goldsmith also noted that Balon's scores on the intellectual testing suggest mild cognitive deficits (*Id.*). Balon disclosed to Dr. Goldsmith that he had previously lost consciousness when he fell off a roof and hit his head.

Thereafter, the Court conducted a hearing on April 21, 2025, to determine Balon's mental competency. 18 U.S.C. §§ 4241(c) and 4247(d). Balon was specifically advised of his right to testify at the hearing. The government moved to admit the Forensic Psychological Evaluation (Doc. S-43) into evidence without objection. The parties stipulated to the findings in the Forensic Psychological Evaluation. Balon declined to testify. No other evidence or testimony was presented.

Based on the Court's independent review of the Forensic Psychological Evaluation and the Court's observations at the hearing, the Court found by a preponderance of the evidence that Balon was presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. § 4241(d). Accordingly, Balon was committed to the custody of the Attorney General for hospitalization and treatment in a suitable facility to determine whether there was a substantial probability that, in the foreseeable future, Balon would attain the capacity to permit the proceedings to go forward (Doc.

51). The Court also stated that Balon should be evaluated for a traumatic brain injury (*Id.*).

Following Balon's hospitalization at Metropolitan Correctional Center-Chicago, Dr. Drew Miller opined that Balon "continues to suffer from a mental defect which renders him unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense" (Doc. S-90). Dr. Miller further opined that Balon was "unlikely to be restored to competency within a reasonable period of time, even with additional periods of restoration treatment" (*Id.*). The Court set a competency hearing (Doc. 107).

Thereafter, the United States represented to the Court that it had "gathered evidence that suggests that the defendant may in fact be competent, but the United States requires additional time to complete its investigation" (Doc. 109). After a brief continuance, the United States moved the Court to reappoint Dr. Goldsmith to conduct a second psychological examination of Balon, to include a malingering test (Doc. 116). The motion was granted, and Dr. Goldsmith performed a second psychological evaluation (Doc. S-132). This time, Dr. Goldsmith found Balon competent to proceed, in part, because the test results indicated that Balon feigned his lack of knowledge of the legal system (*Id.*).

Shortly before the competency hearing, Balon moved for an "Order to Conduct Neurological Examinations to Determine Defendant's Present Traumatic Brain Injury" (Doc. 126). Specifically, Balon requested that the "Court order neurologic tests to, at least, include a Computerized Tomography (CT) scan and Magnetic

[Resonance] Imaging (MRI) with results and medical opinions as to TBI" (*Id.*). While the motion was under advisement, the Court proceeded with the competency hearing. Dr. Miller and Dr. Goldsmith testified that neurologic tests, such as CT scans and MRI imaging, are beyond the scope of their practices.

At Balon's request, the competency hearing was reopened on July 17, 2026 (Doc. 190). At the hearing, Dr. Mark Rubino, a board-certified neurologist, testified on behalf of Balon. Dr. Rubino administered the Montreal Cognitive Assessment Test to Balon (*Id.* at 9). Balon's low score showed he was "significantly impaired." (Doc. S-172-1). Dr. Rubino examined the cranial nerves and conducted physical exams and determined "something's wrong with his brain" (Doc. 190 at 11). Dr. Rubino could not opine on the Balon's competency (*Id.* at 16, 18). He testified that brain imaging would not indicate whether the defendant would be competent to proceed to trial (*Id.* at 24).

**ANALYSIS**

The test for determining competence to stand trial is whether a defendant has sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding, and whether the defendant has a rational as well as factual understanding of the proceedings against him or her. *United States v. Marks*, 156 F.4th 1169 (11th Cir. 2025); *United States v. Brad*ley, 644 F.3d 1213, 1265–1270 (11th Cir. 2011).

In the Eleventh Circuit, it remains unclear which party has the burden of proof under 18 U.S.C. § 4241. *See Marks*, 156 F.4th at 1178 (11th Cir. 2025) ("We need not

definitively decide whether, as a general matter, § 4241 places the burden of proof as to competency on the defendant in all cases, or on the government in all cases, or whether the burden of proof depends on which party requests the competency hearing."). Which party bears the burden of proof "affects the outcome only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Id.*

The Court begins by accepting Balon's representation that he previously suffered a brain injury because of a fall. Balon's representation is supported by Dr. Rubino's evaluation and conclusion that Balon's "eye abnormalities suggest a congenital etiology with a head injury likely aggravating it" (Doc. 186-1). Balon has been diagnosed with an Unspecified Neurocognitive Disorder (Doc. 141-3).

Drs. Miller, Goldsmith, and Rubino[1] all agree that Balon operates with below-average intelligence. For example, Dr. Miller administered the Test of Nonverbal Intelligence, the Cognitive Intelligence Test (TONI-4), the Kaufmann Brief Intelligence Test (KBIT-2), and the California Verbal Learning Test (CVLT-II) (*Id.* at 8-10). While Balon's scores on both the TONI-4 and the KBIT-2 fell in the below-average range, Dr. Miller indicated that Balon's visual impairments[2] may have affected his performance on the KBIT-2 test. As a result, Dr. Miller stated that the

[1] Unlike Drs. Miller and Goldsmith, Dr. Rubino could not offer an opinion as to competency.
[2] During the administration of the test, Balon stated in Spanish, "se juntam" (they blur or merge).

results warrant "cautious interpretation" (*Id.*). The CVLT-II results showed Balon put forth adequate effort and experienced challenges with auditory attention span (*Id.*). But it was noted that Balon was anxious during the exam, which "may have also negatively impacted his auditory attention span" (*Id.*).

But courts have held that intellectual deficits and low IQ do not preclude a finding of competence. *See, e.g., Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." (citation omitted)); *Gutierrez v. United States*, No. 8:13-cv-2336-T-30EAJ, 2014 WL 6473743, at *7 (M.D. Fla. Nov. 18, 2014) (finding that "a low IQ or mental deficiency does not necessarily mean that [a 2255 Petitioner] was incompetent to stand trial"); *see also United States v. Carter*, No. 1:12-CR-29, 2013 WL 6668715, at *13 (E.D. Tenn. Dec. 18, 2013) (finding defendant competent even though defendant was withdrawn, had a low IQ, and was a simple thinker with a poor verbal memory and could be expected to have difficulty with complex hypothetical questions).

While under Dr. Miller's care at UCC Chicago, Balon demonstrated, on different occasions, an adequate understanding of many aspects of his criminal proceedings. For example, Balon indicated that his attorney's role was to defend him and that a witness would testify as to whether he committed the crime (Doc. 141-3). Balon further stated that the judge is neutral, in charge of the court, and decides the sentences (*Id.*). Balon understood that sentencing was at the end of the proceedings (*Id.*). While he said no one told him the potential consequences if found guilty, he

thought it would involve jail time and be "pretty long" (*Id.*). He stated that a defendant who is found not guilty gets to go home (*Id.*). Balon understood that the jury was "in the middle" and "neutral" (*Id.*). He described the jury's role as: "The jury agrees to see if we committed the crime" (*Id.*). He also understood that a jury consists of 12 people and correctly stated that a bench trial is without a jury (*Id.*).

With respect to courtroom behavior, Balon stated that he would remain silent until the judge decided he had the right to speak (*Id.*). Balon indicated he knew to use a low voice when asking his attorney questions in court and knew not to speak to the prosecutor without his attorney present (*Id.*). Balon also acknowledged that there were negative consequences for misbehaving in court (*Id.*).

Balon stated that he was charged with "drug trafficking" (*Id.*). He indicated that he was arrested with two other people on "the 15th or 16th of October 2024" by the Coast Guard (*Id.*). Balon stated that there was a lot of evidence against him and that many people witnessed the crime (*Id.*). He identified drugs as potential evidence against him.

Balon confirmed that he would be open and honest with his attorney and follow his advice (*Id.*). He said his attorney is a person he could ask if he did not understand something (*Id.*). When asked how he would settle a disagreement with his attorney, Balon replied, "I could ask for another attorney" (*Id.*).

Balon, however, did not consistently demonstrate this understanding (*Id.*). At various times, he struggled to understand aspects of the legal proceedings, roles,

options, and potential outcomes (*Id.*). He appeared to have a particular difficulty with the concept of a plea agreement (*Id.*). For example, during one interview, it was reported that Balon defined a plea agreement as "to remain silent" (*Id.*). During a subsequent interview, Balon stated that "a plea bargain is where all the jurors reach an agreement and the judge says something" (*Id.*). While Dr. Miller attributes this to Balon's cognitive disorder, Dr. Goldsmith offers another explanation.

Following Dr. Goldsmith's second evaluation of Balon, she formed the opinion that Balon was feigning a lack of understanding of the legal system (Doc. 141-8). She is also of the opinion that Balon likely feigned memory problems and the severity of these mental health symptoms (*Id.*). In support, Dr. Goldsmith cites Balon's results from the Inventory of Legal Knowledge (ILK).[3] Balon's score of 41 indicates he was feigning ignorance of the legal system (*Id.*).

Dr. Goldsmith testified that her findings were further supported by reports from Balon's co-defendants (Doc. 154). According to his co-defendants, Balon was able to navigate a boat on the high seas, including using a GPS device (Doc. 154 at 28). Balon was also alleged to have been the "loadmaster"- a position responsible for the drugs onboard the vessel (Doc. 141-1). While being confined on the Coast Guard ship, Balon told co-defendant Mario Antonio Anchundia-Bazurto not to tell anyone that the dispatcher at the launch site was his brother (Doc. 141-5). According to

[3] Both Dr. Miller and Dr. Goldsmith believe the ILK results should be read with caution, as "the ILK is intended for English-speaking adults who are 12 years old or older and who can understand the language at a fifth grade level" (Doc. 154 at 98). Balon does not speak English, so the test was administered with a Spanish interpreter.

Anchundia-Bazurto, Balon knew what they did was wrong and did not want to get his brother in trouble (*Id.*).

Recorded calls to family members further support Balon's awareness and understanding of the legal proceeding. For example, on September 14, 2025, Balon stated that he only had two weeks left at UCC-Chicago (Doc. 141-6 at 7). Approximately two weeks later, on September 26, 2025, Balon's competency evaluation and restoration at UCC-Chicago concluded (Doc. 141-3). Balon also stated that he hoped to be released at the conclusion of his stay at UCC-Chicago, presumably because he believed he would be found not competent to proceed (Doc. 141-6 at 7). After being returned to the Middle District of Florida, Balon told family members in November that he may be home for the holidays/Christmas (Doc. 141-4). Again, presumably because he thought the Court would find him not competent to proceed. Balon also demonstrated an understanding of the court proceedings by explaining to family members that his two co-defendants had already been sentenced (*Id.*).[4] And provided his attorney's phone number to his family (*Id.*).

In addition, Dr. Goldsmith noted Balon's responses to questions posed during her second interview "indicated a better understanding of the United States legal system" (Doc. 154 at 27). Balon accurately described his attorney's role as to "help me" (*Id.* at 30). Balon said he could assist his attorney by "tell[ing] him what happened" and confirmed that he could describe the events leading up to his arrest (*Id.*

[4] One co-defendant was sentenced on November 5, 2025 (Doc. 101). The other moved to continue his sentencing, which had been scheduled for that same date (Doc. 105).

at 31). Balon knew the judge's role was to oversee the courtroom, and he understood the jury's role (*Id.*). He described a witness's role as to "help me," which Dr. Goldsmith understood him to mean that a witness could testify for or against him (*Id.* at 32).

With respect to a plea, Balon was aware of pleas of guilty and not guilty (Doc. 141-8). And Dr. Goldsmith is of the opinion that Balon "has the ability to consult with his attorney and decide if he is going to plead guilty, not guilty, take a plea bargain, but he has the ability to decide with the assistance of his attorney how to go forward with his legal case" (*Id.* at 32-33).

Finally, Balon knew the date of his next court appearance. While Balon reported feeling comfortable working with his attorney, he expressed some anxiety about his co-defendants and their role in his case (Doc. 141-8), both of whom pleaded guilty.

Based on the totality of the evidence, the demeanor and credibility of the witnesses, and the Court's own observations of Balon during Court proceedings (to include his interactions with counsel), the Court is satisfied that Balon has an adequate understanding of the nature and consequences of the proceedings against him and that he can assist properly in his defense. During and following his competency restoration at UCC-Chicago, Balon has demonstrated an increased understanding of the United States legal system. While his responses to questioning have been inconsistent, the Court agrees with Dr. Goldsmith's opinion that Balon at times feigns ignorance.

As a result, the Court finds defendant Francisco Javier Balon Del Pezo **COMPETENT TO STAND TRIAL**.

**ORDERED** this 4th day of November 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE