UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:24-CR-474-WFJ-SPF

FRANCISCO JAVIER BALON DEL PEZO

______________________________/

DEFENDANT FRANCISCO BALON DEL PEZO'S OBJECTIONS TO ORDER FINDING FRANCISCO JAVIER BALON DEL PEZO COMPETENT TO STAND TRIAL (Dkt. 204)

Comes now, Defendant, Francisco Javier Balon Del Pezo (Balon), by and through undersigned counsel and respectfully submits the following objections as to the Honorable Court's Order Finding Defendant Francisco Javier Balon Del Pezo Competent To Stand Trial (Dkt. 204) and further shows:

**OBJECTION ONE**: The Court's Order states, "Based on the totality of the evidence, the demeanor and credibility of the witnesses, and the Court's own observations of Balon during Court proceedings (to include his interactions with counsel), the Court is satisfied that Balon has an adequate understanding of the nature and consequences of the proceedings against him and that he can assist properly in his defense." Dkt. 204 at 10.

Balon objects: The Court's Order does not provide a statement or specific analysis as to whether the Court weighed the evidence to specifically determine and make specific findings of preponderance of the evidence as to competency. Balon was evaluated and examined as to competency four times. Three evaluations and examinations determined that Balon was not competent to proceed in the instant case. Dkt. S-43 at 2-4; Dkt. 141, Transcript January 6, 2026, at 92-93; Dkt. S-90, Exhibit A was Exhibit 5 at 19; Dkt. 154, Transcript July 17, 2026, at 10,16, Dkt. 190 at 10, 16.

By a preponderance of the evidence, three of the four evaluations and examinations of Balon in this matter found Balon not competent to proceed in the instant case and that Balon is not competent to proceed to trial. Therefore, the preponderance of psychological evidence and medical evidence is that Balon is not competent to proceed in the instant case.

During Balon's four months at MCC Chicago he was consistently evaluated. Was under daily observation. And underwent several psychological tests. After about four months as an inpatient at MCC Chicago, Balon was determined not to be competent to proceed in the instant case. Dkt. S-90 at 19. By comparison Dr. Goldsmith's second evaluation of Balon found Balon competent to proceed. Dr.

Goldsmith's second evaluation was done in about ninety minutes during a jail visit. Dkt. 154 at 62; Transcript January 6, 2026, at 62. The depth, length of time, team opinions, and degree of the MCC evaluation far outweigh Dr. Goldsmith's brief jail visit.

**OBJECTION TWO**: The Court's Order states that Dr. Debra Goldsmith's "… second evaluation of Balon, she formed the opinion that Balon was feigning a lack of understanding of the legal system (Doc. 141-8). She is also of the opinion that Balon likely feigned memory problems and the severity of these mental health symptoms (*Id*.). In support, Dr. Goldsmith cites Balon's results from the Inventory of Legal Knowledge (ILK). (footnote omitted here) Balon's score of 41 indicates he was feigning ignorance of the legal system (*Id*.)". Dkt. 204 at 8. The Order states "… the Court agrees with Dr. Goldsmith's opinion that Balon at times feigns ignorance." *Id*. at 10.

Balon objects to the Court's Order weighing the ILK test results to indicate Balon was feigning ignorance of the legal system. Furthermore, Balon objects that the ILK test results indicate that Balon is competent to proceed in the instant case. And Balon objects that the Order finds as credible Dr. Goldsmith's opinions as to feigning drawn from the ILK test results.

In Dr. Goldsmith's initial psychological evaluation of Balon she opined that Balon was not competent to proceed in the instant case. Dkt. 204 at 1-2. Dkt. S-43. The Court's Order states In Dr. Goldsmith's second evaluation of Balon she "… found Balon competent to proceed, in part, because the test results indicated that Balon feigned his lack of knowledge of the legal system (*Id*.)." Dkt. 204 at 3.

In this matter, the ILK was an invalid and not appropriate test to administer to Balon. As to whether the ILK was an appropriate test and valid test to administer to Balon, Dr. Drew Miller testified "… the Inventory of Legal Knowledge is not a test of competency. It's not a test of malingering." Dkt. 141, Transcript January 6, 2026, at 98. Therefore, the ILK test results and all information obtained from the ILK test are not valid and should not have been considered by the Court in rendering an Order finding Balon competent to proceed in the instant case.

In Dr. Goldsmith's testimony she did not state that during her second evaluation of Balon that she believed that Balon was feigning his knowledge of the United States legal system. Dr. Goldsmith testified that she believed that there was "… a possibility that he was feigning Balon was possibly feigning his knowledge of the legal system …". Dkt. 154 at 43, Transcript January 6, 2026, at

43. Thus, Dr. Goldsmith was merely speculating that Balon was "possibly feigning" lack of knowledge of the United States legal system.

Furthermore, Dr. Goldsmith admitted that the ILK test was not an appropriate test to administer to Balon. On cross-examination Dr. Goldsmith testified that the Inventory of Legal Knowledge (ILK) test results should be interpreted with "caution". Dkt. 204 at 8, Footnote 3. The ILk is an English language test, not in the Spanish language. The ILK is only given to individuals who can read English at least to a fifth grade reading level. *Id*. The ILK is not intended for use with people who are not familiar with the United States Legal System. Balon is not from the United States. Balon does not speak English. *Id.* Balon does not read English. Dr. Goldsmith testified that she used the questions that are on the ILK to assess Balon's competency to proceed in his case. Because he had "… just completed four months of competency training regarding the American legal system." Dkt. 154 at 40; Transcript January 6, 2026, at 40. However, Dr. Goldsmith knew that the Chicago MCC evaluation determined that Balon is not competent. *Id*. at 44-45. Dr. Goldsmith admitted that she had never before administered the ILK to a "Spanish-speaking defendant". *Id*. at 22, 44-46. Dr. Goldsmith was using the invalid ILK test results to merely speculate upon Balon's knowledge of the legal system in the United States.

In her testimony Dr. Goldsmith did not affirm that the ILK was a valid test or an appropriate test to assess Mr. Balon's knowledge of the United States legal system. Dr. Goldsmith did not affirm in her testimony that the ILK was a valid test or an appropriate test to assess Balon's competency. Dr. Goldsmith did not affirm in her testimony that the ILK test was a valid test or an appropriate test that was reliable to assess Balon's understanding of the court system in the United States, or the United States legal system, or court participants or their roles in the legal process and in trial.

The Court's Order's findings citing the ILK test results and or Dr. Goldsmith's interpretations and speculations of the ILK test results were based upon an invalid and not appropriate ILK test as to Balon's competency and Balon's understanding of the court system and trial in the United States.

**OBJECTION THREE:** The Court's Order states, "Based on the totality of the evidence, the demeanor and credibility of the witnesses, and the Court's own observations of Balon during Court proceedings (to include his interactions with counsel), the Court is satisfied that Balon has an adequate understanding of the nature and consequences of the proceedings against him and that he can assist properly in his defense." Dkt. 204 at 10.

Balon responds that Dr. Drew Miller stated, "Based on the totality of these findings, it is the opinion of the undersigned psychologist that despite participating in competency restoration treatment, "**Mr. Balon Del Pezo continues to suffer from a mental defect which renders him unable to understand the nature and consequences of the proceeding against him, or to assist properly in his defense."** (Emphasis in original). S-90, Exhibit 5, now Exhibit A at 19. Dr. Drew Miller testified that he is a Forensic Psychologist who primarily assesses competency at the BOP MCC Chicago, Illinois. Dkt. S-90, Exhibit 5, now Exhibit A at 2. Balon was intensively evaluated at MCC for about four months by a treatment team and information was drawn from multiple sources. Dkt. 141 at 75-78.

Thus, after an about four-month intensive evaluation of Balon's competency at the BOP MCC Chicago, Balon was determined to have a mental defect which renders him unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense. Dkt. S-90 at 19, Exhibit 5 now Exhibit A at 19. The BOP MCC determination that Balon is not competent is the prevailing weight of the evidence that Balon is not competent. The BOP MCC Chicago intensive thorough evaluation substantially outweighs all other evidence, observations, and findings as to Balon's competency.

**OBJECTION FOUR**: The Court's Order states "Dr. Goldsmith that her findings were further supported by reports from Balon's co-defendants (Doc. 154). According to his co-defendants, Balon was able to navigate a boat on the high seas, including using a GPS device (Doc. 154 at 28)." Dkt. 204 at 8.

Balon objects, Dr. Goldsmith's testimony that Balon used a GPS device was not correct and was contrary to the agent's reports as to what the co-defendants stated during the agent's interviews of the co-defendants. Steven Hirsch of the Coast Guard Investigative Services testified from two reports of interviews with two codefendants of Balon. The reports indicated that Balon was a loadguard who watched the drugs and that Balon sometimes navigated/drove the boat using a compass during the voyage. Dkt. 141, Transcript January 6, 2026, at 130, 136,150-151. The agent's reports did not state that Balon used a GPS to navigate the boat. Dr. Goldsmith mistakenly testified that the agents' reports stated Balon navigated the boat using a GPS device.

**OBJECTION FIVE**: The Court's Order states, "Dr. Rubino could not opine on the Balon's competency (*Id.* at 16, 18)." Dkt. 204 at 4.

Balon objects, during the reopened Competency Hearing on July 17, 2026, Dr. Mark Rubino was asked about Balon's cognitive ability and brain damage to

communicate effectively in a courtroom setting and trial. Dr. Rubino testified that "… he is clearly has brain damage that would cause impairment. To the extent that it affects his ability to stand trial is unclear, but there is basis for why he would not be able to." Dkt. 190, at 16, Transcript July 17, 2026, at 16. Dr. Rubino's testimony as to Balon's ability to stand trial is that "…there is basis for why he would not be able to". *Id*. Thus, Dr. Rubino did opine that Balon is not competent to stand trial.

Furthermore, Dr. Rubino testified that he administered to Balon the Montreal Cognitive Assessment (MCA) test. Balon scored 15 of 30. Dr. Rubino testified a "… score anything less than a 22, you cannot make medical decisions for yourself in regards to any kind of surgery or anything like that." *Id*. at 10. Thus, because Balon does not have the cognitive competence to make informed decisions as to "any kind of surgery or anything like that" then Balon is not cognitively competent to make informed decisions as to court proceedings in which he is a criminal defendant. Balon's lack of competency to weigh informed medical decisions as to his health is tantamount to Balon's lack of competency to weigh and make informed decisions as to proceedings in the instant case and to proceed to trial. The medical evidence and preponderance of psychological

evidence clearly show that Balon's capacity to make rational decisions in his case is at best poor.

**OBJECTION SIX**: The Court's Order in the "ANALYSIS" section lists several references to Balon's responses to questions as to the legal system posed to him while being evaluated at MCC Chicago and by Dr. Goldsmith. Dkt. 204 at 6-10. The Order emphasizes Balon's responses as indicating that Balon is competent to proceed to trial. *Id*.

Balon objects that the Order does not with specificity set forth and weigh in its analysis the written evaluation rendered after Balon was evaluated for about four months at MCC Chicago which specifically stated that Balon is not competent to proceed to trial.

The MCC evaluation states "In sum, despite his consistently attending competency restoration groups for four months, Mr. Balon Del Pezo did not demonstrate an adequate factual understanding of court processes, court personnel, potential consequences of court proceedings, his charges, pleas, or plea agreements. Review of his responses to questions during the previous Competency Evaluation suggested his competency related abilities improved minimally. While the repetition of legal concepts and situations may have allowed Mr. Balon Del Pezo to bring these to mind in some instances, it was apparent during interviews that he did not

understand the terms or how to apply them to his case or hypothetical situations. In other words, his ability to apply his limited factual understanding to make rational decisions remains poor. He would also struggle to assist his attorney with his defense, as he still appeared confused regarding the meaning of his charges, the allegations against him, relevant evidence, and how he can best help his attorney. Despite repetition, rephrasing, and educating in both group and individual settings, Mr. Balon Del Pezo's ability to learn appeared impaired by deficits in verbal comprehension and memory. The aforementioned deficits in the competency related abilities are best explained by Mr. Balon Del Pezo's Unspecified Neurocognitive Disorder. Based on the totality of these findings, it is the opinion of the undersigned psychologist that despite participating in competency restoration treatment, **Mr. Balon Del Pezo continues to suffer from a mental defect which renders him unable to understand the nature and consequences of the proceeding against him, or to assist properly in his defense.** Emphasis in original. Dkt. S-90, Exhibit A previously Exhibit 5 at 19.

The BOP Medical Facility Forensic Evaluation report by Dr. Drew Miller discussed "Restoration Prognosis and Recommendations". "Mr. Balon Del Pezo's deficits in competency-related abilities appear to stem from both his premorbid cognitive deficits as well as the exacerbation of those deficits resulting from a traumatic brain injury. The course of cognitive deficits associated with

Neurocognitive Disorders are variable and depend on etiology. Although impairments associated with mild traumatic brain injuries often resolve within days to weeks following the injury, recovery from severe traumatic brain injuries is more variable and often incomplete. Though interventions, support, and recovery time can sometimes improve functioning, cognitive deficits related to the disorder do not respond to clinical interventions as mood or psychiatric disorders sometimes do. While Mr. Balon Del Pezo's displayed good effort during the present evaluation and the repetitive/rephrasing of information, his rate of learning was slow and he demonstrated minimal improvement in his understanding and application of legal concepts. His deficits in verbal reasoning and memory are likely to continue and suggest a poor prognosis." "… i**t is my opinion Mr. Balon Del Pezo is unlikely to be restored to competency within a reasonable period of time, even with additional periods of restoration treatment**." Emphasis added here. *Id*. at 19.

Respectfully submitted,

s/Ronald Marzullo
Ronald Marzullo, Esq.
P. O. Box 1205
Valrico, FL. 33595
Tel: 813 662 3080
FBN: 613177
Email: marzullorj2@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2026, a true and correct copy of the foregoing was furnished by the CM/ECF system with the Clerk of Court, which will send a notice of electronic filing to counsel of record for the United States.

s/Ronald Marzullo

Ronald Marzullo, Esq.